**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS GEORGE MANUEL,

    Petitioner,

v.                                                CIVIL ACTION NO. 2:17-CV-11655
                                                    HONORABLE DENISE PAGE HOOD

BONITA J. HOFFNER,

    Respondent.
_____/

**ORDER DENYING MOTION FOR RELEASE/APPEAL ON BOND [#18]**

Before the Court is habeas petitioner Thomas George Manuel's motion for release on bail pending a decision on his habeas petition. For the reasons stated below, the motion is DENIED.

To receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show a substantial claim of law based on the facts *and* exceptional circumstances justifying special treatment in the interest of justice. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)(*quoting Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990)); *See also Nash v. Eberlin,* 437 F. 3d 519, 526, n. 10 (6th Cir. 2006). There will be few occasions where a habeas petitioner meets this standard. *Dotson*, 900 F. 2d at 79. Federal courts may grant bail when granting the writ. *See Sizemore v. District Court,* 735 F. 2d 204, 208 (6th Cir. 1984).

Petitioner does not address in his motion that he has a substantial claim of

law as to any of his claims raised in his petition. Following a jury trial in Genesee County Circuit Court, the jury convicted Petitioner of armed robbery, Mich. Comp. Laws § 750.529, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to prison for twenty-five to fifty years for the armed robbery and to lesser terms for the remaining convictions. The Michigan Court of Appeals affirmed Petitioner's convictions, *see People v. Manuel*, No. 316756, 2014 WL 3705101 (Mich. Ct. App. July 24, 2014), and on March 31, 2015, the Michigan Supreme Court denied leave to appeal. *See People v. Manuel*, 497 Mich. 982; 861 N.W.2d 29 (2015).

In 2016, Petitioner filed a motion for relief from judgment, which the trial court denied under Michigan Court Rule 6.508(D). *See People v. Manuel*, No. 12-031348-FC (Genesee Cty. Cir. Ct. Apr. 26, 2016) (Docket No. 1-1, PageID. 189-192). The Michigan Court of Appeals denied leave to appeal the trial court's decision, *see People v. Manuel*, No. 334728 (Mich. Ct. App. Feb. 13, 2017) (Docket No. 1-1, PageID. 112), and Petitioner's subsequent appeal to the Michigan Supreme Court was rejected as untimely on April 21, 2017. *Id.*, PageID. 115.

Petitioner's habeas corpus petition before the court raises the following grounds for relief are: (1) there was insufficient evidence to support his

conviction for armed robbery; (2) the prosecutor failed to show due diligence in locating defense witnesses and also used perjured testimony to obtain a criminal conviction; (3) trial counsel was ineffective for failing to object to the prosecutor's misconduct; (4) trial counsel was ineffective for failing to obtain the complainant's mental health records and for failing to secure an expert witness to impeach the complainant's testimony; (5) trial counsel was ineffective in failing to present evidence of the alleged victim's character trait for violence; (6) trial counsel was ineffective for failing to challenge a biased juror for cause; (7) he was denied his Sixth Amendment right to a speedy trial; (8) the assistant prosecutor suborned perjury, obstructed justice, and failed to correct a witness's perjury; (9) the verdict is against the great weight of the evidence; and (10) he was denied his right to effective assistance of appellate counsel. The State argues in an answer to the petition that these claims are meritless, procedurally defaulted, or not cognizable on habeas review.

Petitioner's habeas claims were adjudicated by a state court on the merits. Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA). Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 15, 16 (2013); 28 U.S.C. § 2254(d). Under the

3

AEDPA deference, the state court's determinations of law and fact must be "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Because Petitioner failed to address how he would prevail on the merits of his claims, he is not entitled to release on bail pending review of his habeas petition.

Exceptional circumstances warranting release during review "have been limited to situations where (1) the prisoner was gravely ill, (2) the prisoner committed a minor crime and is serving a short sentence, or (3) possibly where there was an extraordinary delay in processing the habeas petition." *Scheidler v. Berghuis*, 07–cv–01346, 2008 WL 161899 (E.D. Mich. 2008) (citations omitted); *see also Milstead v. Sherry*, 07–cv–15332, 2009 WL 728540 (E.D. Mich. 2009) (citation omitted). Federal courts very rarely find "exceptional circumstances" and very rarely release petitioners before ruling on the merits of their claims. *Blocksom v. Klee*, 2015 WL 300261, at *4 (E.D. Mich. Jan. 22, 2015).

Recent cases involving federal prisoners and COVID-19 have cautioned in basing compassionate release solely on the possibility of contracting COVID-19. In considering an application for compassionate release, the Court of Appeals for the Third Circuit recently noted "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 20-1033,

4

2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). "[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). Courts have noted that,

> although the COVID-19 situation is an extraordinary one for the population at large in this country, including prisoners, and without diminishing in the least the fact that [Defendant] [may be] part of an especially at-risk COVID-19 population, [Defendant] has not shown that prison [or jail] authorities are unable or unwilling to address this serious problem within [facilities], or that [Defendant] is unable to take the general, protective measures applicable to all as of yet unafflicted persons, i.e., wash hands frequently, avoid touching the face and so forth. . . . Moreover, ... authorities may be able to isolate highly at-risk prisoners, such as [Defendant], more easily than isolation or 'social distancing' is achieved in the general population, e.g., housing in administrative segregation, partial lockdowns or transfers. . . . Prisons [and jails] are certainly able to order their afflicted employees to stay at home, and can probably, more easily find testing opportunities for their essential employees than is yet possible for the general population. . . . Finally, prison and [other] officials are more likely to know who may be best subject to compassionate release ... than is the undersigned.

*United States v. Barai*, No. 2:16-CR-00217-MCE, 2020 WL 1812161, at *2 (E.D. Cal. Apr. 9, 2020).

Petitioner claims that the COVID-19 pandemic is an exceptional circumstance in light of his health conditions. He asserts that he suffers from

5

sleep apnea, acute bronchitis, chronic obstructive pulmonary disease, chronic rhinitis, and sickle cell.  Petitioner is currently housed in a domed, communal setting that houses 160 prisoners.  There are 10 cubes in each hallway (there are 2 hallways).  The prisoners share a communal restroom, with three disinfectant bottles that are refilled three times a day.  The prisoners also eat communally.  Petitioner claims that social distancing cannot be practiced and he is at risk at contact COVID-19.

The Respondent submitted various exhibits showing the State has taken to prevent and mitigate the COVID-19 spread within the Michigan Department of Corrections, and specifically, at Kinross.  Michigan Governor Gretchen Whitmer issued an executive order that outlines protocols for the Michigan Department of Corrections (MDOC) to follow during the current crisis.   Mich. Exec. Order No. 2020-62.  ECF No. 20, Exhibit A.  The order requires screening all persons, including staff, entering a prison facility "in a manner consistent with guidelines issued by the Centers for Disease Control and Prevention."  *Id.*, p. 2, ¶ 1.a.  The order further limits visits and off-site appointments, and it orders social distancing to be practiced within the facilities.  *Id.*, p. 2–3, ¶¶ 1.b, 1.c, 1.k.  Stringent cleaning of the facilities is directed "on a regular and ongoing basis."  *Id.*, p. 2, ¶ 1.g.  The order further requires MDOC to develop and implement protocols for prisoners who display symptoms of COVID-19.  *Id.*, p. 2, ¶ 1.d.  The MDOC has implemented procedures that comply with the order.  Healthcare staff are meeting

6

with prisoners who display symptoms, and those who meet certain criteria are being tested. *See* 2020 Coronavirus (COVID-19) Response Q&A, Mich. Dep't of Corr., ¶ 15, https://www.michigan.gov/corrections/ 0,4551,7-119-9741_ 12798-521973--,00.html (last visited May 15, 2020). Personal protective equipment, including masks, is being distributed to staff and prisoners. *See* https://medium.com/@MichiganDOC/mdoc-takes-steps-to- prevent-spread-of- coronavirus-covid-19-250f43144337 (last visited May 15, 2020). Prisoner transfers have been limited. *See id.* Respondent argues that through Executive Order 2020-62, as well as MDOC's current procedures, the State has taken significant steps to combat the spread of COVID-19 within the prison system. The Respondent further asserts that the State and MDOC is closely monitoring this situation and will act as necessary to protect all those in Michigan, including its inmates housed in state correctional facilities.

The Respondent claims that on April 8, 2020, MDOC Director Heidi Washington issued a Director's Office Memorandum 2020-30, which outlined further steps and processes to protect staff and prisoners from the spread of COVID-19. ECF No. 29, Exhibit B. These include measures to develop isolation areas to place and treat prisoners who have tested positive for COVID-19. The Director's Memorandum outlines a series of precautions staff must take to help COVID-19 from spreading. The Respondent queries that given these significant steps, it is not at all clear that Petitioner would be safer from contracting the

7

COVID-19 virus upon release, where he will be in contact with multiple persons in his effort to reenter into society. The Respondent claims that those persons may not adhere to the social- distancing guidelines that have been advised by State authorities, much less the stringent procedures enacted by MDOC.

The Respondent further notes that there has been extensive testing of inmates in the Kinross Correctional Facility, where Petitioner is incarcerated. As of May 14, 2020, at 9:00 p.m., there are 1539 prisoners at the Kinross Correctional Facility, with 1422 of those prisoners testing negative for COVID-19, 1 prisoner testing positive for COVID-19, and 116 test results pending. *See* https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last visited May 15, 2 020).[1] This testing regime will assist MDOC in implementing Governor Whitmer's Executive Order as well as Director Washington's Memorandum and thereby provide additional protection for inmates not just at the Kinross Correctional Facility, but at state correctional facilities throughout the State.

Petitioner's concern that he risks contracting COVID-19 in a prison setting is valid and understandable. Petitioner suffers from various health problems. However, the facility where he is currently incarcerated, does not appear to be a

---

[1] As of July 27, 2020, out of 1,518 prisoner tested, 1 has tested positive. See, https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f4314433 7 (last visited 7/28/20).

8

facility where the virus is posing an inordinate risk to inmates. As noted by the Respondent, to date, only one inmate at Kinross has contracted the virus and no staff member has been diagnosed with the virus. As the Respondent has noted, the MDOC has taken several recent steps to mitigate and prevent the spread of the virus within its facilities, including producing masks for both prisoners and staff, using bleach during facility cleanings, increasing prisoner access to soap, modifying prisoner movement to decrease interaction between prison populations, suspending in person visits at prison facilities, and instituting a detailed protocol for testing and caring for inmates who show symptoms and/or are diagnosed with the virus.

Reviewing the submissions by the parties, the Court finds that Petitioner has not shown that he has a substantial claim of law to prevail on his habeas petition. Petitioner also has not shown exceptional circumstances justifying special treatment in the interest of justice. Petitioner has shown he has various medical conditions, but he has not established he is gravely ill. Respondent has shown that the facility Petitioner is currently housed has only one positive test of COVID-19 by a prisoner and none by staff. It appears that testing has been instituted in this facility and mitigation efforts have been implemented.

Accordingly,

Petitioner's Motion for Release/Appeal on Bond pending review of his petition [ECF No. 18] is **DENIED.**

                                               **s/Denise Page Hood**
                                               **Chief Judge, United States District**

**DATED: July 31, 2020**