UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS GEORGE MANUEL, JR.,

                Petitioner,           CASE NO. 17-cv-11655

v.                              HONORABLE DENISE PAGE HOOD

BONITA J. HOFFNER,

                Respondent.

_____/

## ORDER DENYING PETITIONER'S MOTION FOR A STAY [15], DENYING THE HABEAS CORPUS PETITION [1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Thomas George Manuel, Jr., filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The petition challenges Petitioner's convictions for armed robbery, assault with intent to do great bodily harm less than murder, and two firearm offenses. The convictions arose from an apparent robbery and shooting at a home in Genesee Township, Michigan on May 11, 2012. Petitioner asserts nine grounds for habeas relief, and he wants a stay so that he can return to state court and exhaust state remedies for an additional claim. The Court is denying both the motion for a stay and the habeas corpus petition.

## I.  Background

### A.  The Charges and Trial Testimony

Petitioner was bound over for trial on five charges:  armed robbery, assault with intent to commit murder, carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony-firearm).  He was tried before a jury in Genesee County Circuit Court.

Jeffrey Curl testified that he was living at 1347 Holtslander Street in Genesee Township on May 11, 2012.  He had known Petitioner for most of his life, and he had known Crystal Hall for about ten years.  At approximately 6:00 a.m. on May 11, 2012, he, Petitioner, Lori Manuel (Petitioner's sister), and Ms. Hall were playing cards and using crack cocaine.  Petitioner and Ms. Hall were also gambling.   At first, the gambling involved money; then it involved drugs.   There was a disagreement of sorts between Petitioner and Ms. Hall because Petitioner (and everyone else) wanted more drugs and because Ms. Hall, the supplier of drugs that day, had no more drugs.  Petitioner suddenly pulled out a gun and tried to rob Ms. Hall.  Petitioner directed Ms. Hall to give him everything that she had, and he either took Ms. Hall's keys, phone, and gun or he made his sister take the items.  Ms. Hall's gun may have been a nine-millimeter firearm that she always carried, but it was lying on the side of the table during the confrontation between Petitioner and Crystal.  As Petitioner and his sister Lori walked out the door to the house, Petitioner turned and

shot Crystal.  Crystal left through the patio door in the back of the house.  When the police arrived, he (Curl) told them what had happened and allowed them to take photos.

Timothy Huddleston testified that on May 11, 2012, he was living at 5060 Harry Street in Flint, Michigan with Charles Beeler and Mr. Beeler's wife Solora. About 6:15 that morning, he heard someone screaming for help. A woman ran around the house and then knocked on their door.  Mr. Beeler permitted the woman to come inside because she said she had been shot.  The woman was bleeding, and she had a hole in her stomach area.  She was in pain, and it was difficult to understand her, but she stated several times that "Dominic" had shot her.  Both Mr. Huddleston and Mr. Beeler called the 911 operator and reported that a woman had been shot.

Mr. Beeler corroborated Mr. Huddleston's testimony.  He also explained that his backyard adjoined Mr. Curl's backyard.

Crystal Hall testified that she was at Jeff Curl's house on May 11, 2012, to use crack cocaine.  About 6:00 a.m., she, Petitioner, and Lori Manuel were sitting at the kitchen table with Mr. Curl.  She had shared her drugs with them, and when only one small piece of crack cocaine remained, she decided to share it with Mr. Curl because it was customary to share the last bit of one's drugs with the homeowner.

Petitioner was pacing back and forth between the living room and the kitchen at the time, and he kept asking her for more drugs.  She told him that she had given

3

him what she could and that she did not have any more drugs to give him because she was splitting her last tiny bit of cocaine with Mr. Curl.  Petitioner continued to pace back and forth, and when he came back into the kitchen, he was holding a gun which he pointed at her.  He told her to give him all her stuff.  She responded by saying, "This is all I have left.  Here, take it."  Petitioner then ordered Lori to get her (Ms. Hall's) purse, phone, and keys, as well as, a gun that was lying on top of some nearby boxes.  After she passed her rings and other things to Lori, Petitioner shot her in the arm and abdomen.  She ran out the back of the house to a neighbor's home and asked for help.

Ms. Hall explained to the jury and that she subsequently had several surgeries and spent eight months in the hospital.   She denied owning or possessing a nine-millimeter handgun, and she claimed that the nine-millimeter handgun at Mr. Curl's home was resting on a box when Petitioner shot her.  She also testified that she did not remember telling the 911 operator that "Dominic" had shot her.

Police Officer Shawn Ball testified that, on May 11, 2012, at approximately 6:15 a.m., he was called to 5060 Harry Street in Genesee Township.  When he arrived, he saw a female who had been shot in the stomach.  The woman was unable to provide an exact address of the shooting, but she described the general area and the vehicle that she had driven to the house where she was shot.  Officer Ball's partner then found the vehicle in a driveway and determined that the crime had been

committed there.  Meanwhile, the victim informed Officer Ball that someone named "Dominic" had shot her.

Officer Robert Kolena also received a call about the shooting at approximately 6:00 a.m. on May 11, 2012.   He went to 5060 Harry Street where he spoke with Officer Ball and acquired information about the victim's vehicle.  He then went around the corner and located the vehicle in the driveway at 1347 Holtslander.  He spoke with Jeffrey Curl who explained what had happened inside the house on Holtslander.  He (Kolena) also cleared the house for any suspects and secured the scene for evidence processing.

The officer in charge of the case was Detective Tim Williams of the Genesee Township Police Department.  Detective Williams explained that he was on his way to work on May 11, 2012, when he received a call about the shooting.  He initially stopped at the Harry Street address and then went around the corner to the Holtslander address where he spoke with Jeffrey Curl.  He took photographs of the exterior and interior of the house and found a .22 caliber shell casing on the kitchen floor.   He searched for guns, but did not find any, and it was his understanding that the fired bullet was still inside the victim.

He also did not locate Ms. Hall's car keys or cell phone, but the car that she had used that day was parked in the driveway of the house.  He found Ms. Hall's purse in the backseat of the car after Hall's father provided him with keys to the car.

There were four nine-millimeter bullets, drug paraphernalia, and other items in the purse.

He tried numerous times to speak with Lori Manuel, but as of the date of trial, he had been unable to speak with her. A warrant was issued for Petitioner's arrest, and within two weeks, a state trooper arrested Petitioner during a traffic stop.

Dr. Hernan Gomez testified that he was an emergency medicine physician at Hurley Hospital and that he attended to Crystal Hall on May 11, 2012. Ms. Hall had a non-complicated bullet wound on the arm, and X-rays revealed a small caliber bullet inside her abdomen. The bullet struck her liver and transverse colon, and the injuries could have caused death.

Petitioner testified in his own defense. He stated that Ms. Hall possessed two guns: a .22 caliber gun and a nine-millimeter gun, which she took everywhere she went. In the weeks before the shooting, Ms. Hall told him about three murders that she had committed or arranged.

Continuing, Petitioner stated that, before the shooting incident, he and his sister Lori, Ms. Hall, and Jeff Curl were playing cards and smoking crack cocaine. He and Ms. Hall also were gambling. First, they played for money, but he was winning, and Ms. Hall ran out of money. Then, they played for crack cocaine, and Ms. Hall ran out of drugs. The situation got a little heated after he won Ms. Hall's money and crack cocaine. She threatened to "pop" him in the head, and he thought

that she intended to shoot him.   So, he grabbed the .22 caliber gun that Ms.  Hall was carrying in a holster on her side and pointed it at her.  He told his sister Lori to grab the other gun, which was lying on some boxes next to Ms. Hall.  Ms. Hall then lunged at him and tried to take the gun from him.  The gun fired during their struggle, and Ms. Hall was shot.  He told Lori to get Lori's belongings, not Ms. Hall's belongings.  Before running away, he threw the two guns behind the flat screen TV in the living room, and Lori threw Ms. Hall's phone and keys there.

Petitioner claimed that he did not intend to shoot or hurt Ms. Hall.  He took the guns from her because he was afraid of her and did not want her to shoot him.

Detective Williams testified on rebuttal that, during his visit to the crime scene, he did not look behind the flat screen TV or move any furniture.  He did go in the backyard, but he did not see any drugs or holster there even though Petitioner had testified that Ms. Hall went out the back door after she was shot and hid the cocaine.  The parties stipulated that Petitioner had been convicted of a specified felony and that he was not eligible to possess a firearm.

On April 10, 2013, the jury found Petitioner guilty of armed robbery, Mich. Comp. Laws § 750.529, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84 (as a lesser offense of assault with intent to commit murder), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and felony-

firearm, Mich. Comp. Laws § 750.227b.  The jury acquitted Petitioner of carrying a concealed weapon.

### B.  The Sentence, Direct Appeal, and Post-Conviction Proceedings

Petitioner was forty-two years old at his sentencing.  The trial court initially sentenced him as a fourth habitual offender to concurrent terms of 450 months (thirty-seven and a half years) to fifty years in prison for the robbery conviction, 134 months (eleven years, two months) to twenty-five years for the assault conviction, 76 months (six years, four months) to twenty-five years for the felon-in-possession conviction, and to a consecutive term of two years in prison for the felony-firearm conviction.  On May 3, 2013, the trial court re-sentenced Petitioner on the armed robbery conviction to a minimum sentence of twenty-five years and a maximum sentence of fifty years.  The sentences for the other crimes remained the same.

On direct appeal, Petitioner argued through counsel that there was insufficient evidence to support the armed robbery conviction.   In a *pro se* supplemental brief, Petitioner argued that the prosecutor had failed to show due diligence in locating two defense witnesses and had used perjured testimony to obtain Petitioner's conviction. Petitioner also argued that trial counsel was ineffective for failing to object to the prosecutor's conduct, for failing to locate and produce two defense witnesses, and for failing to impeach two prosecution witnesses.  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in an unpublished, *per*

*curiam* decision. *See People v. Manuel*, No. 316756, 2014 WL 3705101 (Mich. Ct. App. July 24, 2014). The Michigan Supreme Court denied leave to appeal on March 31, 2015, because it was not persuaded to consider the issues. *See People v. Manuel*, 497 Mich. 982; 861 N.W.2d 29 (2015).

In 2016, Petitioner filed a motion for relief from judgment. He asserted as grounds for relief that: (1) trial counsel was ineffective for failing to obtain the complainant's mental health records and for failing to secure an expert witness to impeach the complainant's testimony; (2) trial counsel was ineffective for failing to present evidence of the complainant's character trait for violence; (3) trial counsel was ineffective for failing to challenge a biased juror for cause; (4) he was denied his right to a speedy trial; (5) the prosecutor suborned perjury, obstructed justice, and failed to correct perjured testimony; (6) the verdict was against the great weight of the evidence; and (7) appellate counsel was ineffective for failing to raise claims about trial counsel and other issues on direct appeal.

The trial court denied Petitioner's motion on grounds that Petitioner had unsuccessfully raised five of the issues, albeit with different specifications, on appeal and that he had failed to show good cause for failing to raise his current claims in his *pro se* appellate brief. The trial court recognized that Petitioner's claim about appellate counsel was new, but the court was not persuaded that the result of the appeal would have been different had appellate counsel raised Petitioner's issues on

direct appeal.  The trial court also stated that Petitioner had not shown good cause for failing to raise his claim about appellate counsel in his *pro se* supplemental brief in the Court of Appeals.  *See People v. Manuel*, No. 12-031348-FC (Genesee Cty. Cir. Ct. Apr. 26, 2016), ECF No. 9-17.

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment.  *See People v. Manuel*, No. 334728 (Mich. Ct. App. Feb. 13, 2017), ECF No. 9-19, PageID. 1289.  Petitioner then attempted to file an application for leave to appeal in the Michigan Supreme Court.  On April 21, 2017, the state supreme court rejected Petitioner's application without filing it because it was untimely.  *See* Letter dated April 21, 2017, ECF No. 1-1, PageID. 115; Affidavit of Larry Royster, Clerk for the Michigan Supreme Court, ECF No. 9-21.

## C.  The Habeas Petition, the State's Response, and Petitioner's Motions

On May 23, 2017, Petitioner commenced this action.  His grounds for relief are:  (1) there was insufficient evidence to support his conviction for armed robbery; (2) the prosecutor failed to show due diligence in locating defense witnesses and used perjured testimony to obtain a criminal conviction; (3) trial counsel was ineffective for failing to object to the prosecutor's repeated misconduct; (4) trial counsel was ineffective for failing to present evidence of the alleged victim's

character trait for violence; (5) trial counsel was ineffective for failing to challenge a biased juror for cause; (6) he was denied his right to a speedy trial; (7) the prosecutor suborned perjury, obstructed justice, and failed to correct a witness's perjury; (8) the jury's verdict was against the great weight of the evidence; and (9) he was denied his right to effective assistance of appellate counsel. *See* Pet'r Reply to Response to the Pet., ECF No. 10, PageID. 1637-1638.  The State argues in an answer to the petition that Petitioner's claims are procedurally defaulted, are not cognizable on habeas review, lack merit, or were reasonably adjudicated by the state courts. *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 8, PageID. 400-402, 468.

After the State filed its answer to the habeas petition, Petitioner asked the Court to stay his case while he sought the State's consent to amend his petition.  The proposed amendment alleged that the trial court committed a structural error by failing to instruct the jury on aiding and abetting.  *See* Mot. to Stay and the supporting brief, ECF No. 12.  The Court denied the motion for a stay because Petitioner had not exhausted state remedies for his proposed new claim and because it would have been futile to attempt to exhaust state remedies.  *See* Order Denying Pet'r Mot. for a Stay, ECF No. 14.

On March 10, 2020, Petitioner filed another motion for a stay, *see* Pet'r Mot. to Stay his Habeas Corpus Pet., ECF No. 15, and on April 29, 2020, he filed a motion

for release on bond, *see* Pet. Mot for Appeal Bond, ECF No. 18.  The Court denied the motion for a bond in a separate order, but his second motion for a stay remains pending.

## II.  Preliminary Matters

### A. The Second Motion for a Stay

In the motion for a stay that Petitioner filed on March 10, 2020, he alleges that he recently acquired an affidavit from an "uninvolved" eyewitness to the crime and that the affidavit establishes his innocence.  He wants the Court to stay this case so that he can present the new evidence to the state court in a successive motion for relief from judgment.  In the alternative, Petitioner wants to amend his habeas petition to include the eyewitness's affidavit as support for the claims presently before the Court.

The affidavit in question comes from Lori Manuel, Petitioner's sister.  The affidavit is dated February 19, 2020, and it reads as follows:

> I Lori Manuel was at Jeffery Curl['s] hous[e] chilling having a good time drinking with Jeffery Curly (sic) Thomas Manuel and Crystal Hall. Crystal Hall and Thomas Manuel was loving on each other[;] then next thing you know they were arguing and I Lori saw Crystal Hall tr[y] to grab a gun off Thomas Manuel and the gun went off [and] I Lori Manuel ran away from the house for my safety.

Pet'r Mot. to Stay, ECF No. 15, PageID. 1703.

Federal district courts ordinarily have authority to grant stays, *Rhines v. Weber*, 544 U.S. 269, 276 (2005), even in a case with fully exhausted claims. *See*

*Nowaczyk v. Warden, New Hampshire State* Prison, 299 F.3d 69, 83 (1st Cir. 2002) (stating that the district court "is entitled to delay decision on [fully exhausted] claims when considerations of comity and judicial economy would be served").  But Petitioner appears to want a stay so that he can exhaust state remedies for a new claim of actual innocence and then amend his habeas petition to include the new claim.  Or he may be attempting to excuse any procedural defaults by showing that he is actually innocent.[1]

The Court has decided to bypass the State's procedural-default defense, *see infra*, section II.B., and "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) (noting that "the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the

---

[1]  In the absence of "cause and prejudice" for a procedural default, a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

death-penalty context").  Because a freestanding claim of actual innocence would not be cognizable here, and because procedural default is not a concern, it would be futile for Petitioner to exhaust state remedies and then amend his habeas petition to raise a claim of actual innocence.  The Court's review of Petitioner's current claims, moreover, "is limited to the record that was before the state court that adjudicated the claim[s] on the merits."  *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).  The Court therefore denies Petitioner's second motion for a stay.  [ECF No. 15]

## B.  The Procedural Default Defense

As noted above, the State maintains that Petitioner procedurally defaulted several of his habeas claims.   A procedural default, however, ordinarily is not a jurisdictional matter, *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016), and a court may bypass a procedural-default question if the claim is easily resolvable against the habeas petitioner.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

Having reviewed the pleadings and state-court record, the Court finds that Petitioner's claims do not warrant habeas relief.  The Court, therefore, excuses the alleged procedural errors and "cut[s] to the merits," because a procedural-default analysis would only complicate the case.  *Thomas v. Meko*, 915 F.3d 1071, 1074 (6th Cir.), *cert. denied*, 139 S. Ct. 2726 (2019).

## III.  Standard of Review

The Court's review of Petitioner's habeas claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pursuant to AEDPA, a habeas petitioner is not entitled to relief on any claim adjudicated on the merits in state-court proceedings unless the adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

> This is a "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam)* (citation and internal quotation marks omitted). The petitioner carries the burden of proof. *Id.,* at 25, 123 S.Ct. 357.

*Pinholster*, 563 U.S. at 181.

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. A state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and, as noted above, review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

## IV.  Discussion

### A.  The Weight and Sufficiency of the Evidence – Claims One and Eight

In his first claim, Petitioner alleges that there was insufficient evidence to support his conviction for armed robbery, and in his eighth claim Petitioner alleges that the jury's verdict was against the great weight of the evidence.  According to Petitioner, there was insufficient evidence that he intended to permanently deprive the complainant of any property.  No state court addressed the merits of Petitioner's weight-of-the-evidence claim, but such claims are a state-law argument, and "a federal court is only allowed to review issues of federal law in a habeas proceeding." *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *see also Wright v. Duncan*, 31 F. Supp. 3d 378, 424 (N.D. N.Y. 2011) (noting that "[a] claim that a jury verdict was against the weight of the evidence is purely a state law claim," which is not a cognizable claim on habeas review); *id*. at 425 (collecting cases).

The only constitutional issue is whether the evidence was sufficient to support Petitioner's conviction for armed robbery.  The Michigan Court of Appeals adjudicated and rejected Petitioner's sufficiency-of-the-evidence claim on the merits during the direct appeal.  For reasons that follow, the state court's decision was objectively reasonable.

### 1.  Clearly Established Federal Law

The Supreme Court stated in *In re Winship*, 397 U.S. 358, 364 (1970), that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Following *In re Winship*, the question on habeas review of a sufficiency-of-the-evidence claim is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The United States Court of Appeals for the Sixth Circuit recently explained that, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:
>
>> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

> *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L.Ed.2d
> 978 (2012) (per curiam) (citations and internal quotation marks
> omitted).

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020); *accord Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In Michigan, "[t]he elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v. Smith*, 478 Mich. 292, 319; 733 N.W.2d 351, 365 (2007). "Armed robbery is a specific intent crime for which the prosecutor must establish that the defendant intended to permanently deprive the owner of property." *People v. King*, 210 Mich. App. 425, 428; 534 N.W.2d 534, 536 (1995).

## 2. Application

The Michigan Court of Appeals accurately summarized the evidence in Petitioner's case as follows:

> The victim and Jeffrey Curl testified that they were smoking crack cocaine with defendant at Curl's home. Defendant and the victim were also gambling. Defendant and the victim had a disagreement because defendant wanted more drugs and the victim was out of crack cocaine. Defendant started to pace, left the room, and then returned with a gun in his hand. There was testimony from the victim and Curl that defendant pointed the gun at the victim and demanded that she give him "everything." Defendant told his sister, Lori Manuel, to get the victim's gun and purse, which included the victim's keys and cellular phone. The victim gave Lori her property and said, "Please don't shoot me." Defendant, standing about five to six feet away, then shot the victim in the abdomen and left the home with Lori through the front door.

*Manuel*, 2014 WL 3705101, at *1.

Petitioner presented a different version of the facts. He attempted to attack Mr. Curl's testimony by stating that Curl had lied and had not seen everything. *See* 4/10/13 Trial Tr. at 72, ECF No. 9-13, PageID. 974. Petitioner tried to discredit Ms. Hall's testimony by describing her as a pill-popper, drug dealer, and murderous person. *See id*. at 37-46, PageID. 939-948. He claimed that Ms. Hall "always acted violent" and had a reputation for being violent. *Id*. at 80-81, PageID. 982-983.

Petitioner also tried to shift some of the blame for the robbery on his sister Lori by claiming that Lori took Ms. Hall's keys and cell phone and that he did not instruct her to do that. *Id*. at 73, 91-92, 95, PageID. 975, 993-994, 997. He also testified that he and Lori threw the guns and the complainant's keys and phone

behind the flat screen TV in Mr. Curl's living room before they ran out of the house. *Id*. at 73-74, PageID. 975-976.

Despite the conflicting accounts of what transpired during the incident, a reviewing court "does not reweigh the evidence or redetermine the credibility of witnesses . . . ." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*.

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution, that Petitioner intended to permanently deprive Ms. Hall of personal property and that he robbed her at gunpoint. The state appellate court's conclusion -- that there was sufficient evidence to prove the elements of armed robbery -- was not contrary to, or an unreasonable application of, *Jackson*. The state court's decision also was not based on an unreasonable determination of the facts. Petitioner, therefore, is not entitled to federal habeas relief on his challenge to the sufficiency of the evidence.

### B.  The Prosecutor – Claims Two and Seven

### 1.  Failure to Show Due Diligence - Claim 2

Petitioner alleges that the prosecutor failed to show due diligence in locating Lori Manuel and Carl Montgomery.  Petitioner contends that he made a timely

request to have the prosecutor produce Ms. Manuel and Mr. Montgomery and that their testimony in his behalf would have made a difference in the trial.

The Michigan Court of Appeals reviewed this claim for "plain error" affecting Petitioner's substantial rights.   In its brief discussion of the claim, the Court of Appeals pointed out that,

> under MCL 767.40a, the prosecution only has a duty to provide notice of known witnesses and to give reasonable assistance to locate them if the defendant requests assistance.  *People v. Burwick,* 450 Mich. 281, 290–291; 537 NW2d 813 (1995).  Due diligence is only required if the prosecution fails to produce an endorsed witness at trial. *People v. Eccles,* 260 Mich. App 379, 388; 677 NW2d 76 (2004).  In this case, the two witnesses were not endorsed.  Further, the record reflects that the prosecution provided defendant with notice of the two witnesses and there is no indication that defendant requested the prosecution's assistance to locate them as required by the statute.  MCL 767.40a(5) (stating that the defendant must make the request for assistance in writing not less than 10 days before the trial or at a time directed by the trial court).

*Manuel*, 2014 WL 3705101, at *2.

The state court's interpretation of state law binds this Court sitting in habeas corpus, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because Lori Manuel and Carl Montgomery were not endorsed witnesses, the prosecutor had no duty to exercise due diligence in trying to produce them.  Petitioner is not entitled to relief on his claim.

## 2.  Perjury - Claims 2 and 7

Petitioner alleges next that the prosecutor relied on perjured testimony from Ms. Hall and Mr. Curl to convict him even though the prosecutor knew that both witnesses lied throughout his case.  Petitioner asserts that Ms. Hall testified falsely when she denied having a gun and when she said that Petitioner made her remove her keys and phone from her purse and then took the items or directed his sister to take the items.  Petitioner claims that Ms. Hall's testimony obviously was false because (i) other witnesses testified that Ms. Hall possessed guns, (ii) he merely instructed his sister to grab Ms. Hall's gun for their own protection, and (iii) Ms. Hall's purse was found in the locked car that Ms. Hall had used earlier in the day.

Petitioner asserts that Mr. Curl's testimony about the shooting and alleged robbery was perjury because Curl ran out of the room or had his head down and did not see anything after Lori Manuel grabbed the nine-millimeter gun.  Petitioner contends that Mr. Curl confessed to giving false testimony when he admitted that he did not tell the police about Ms. Hall's gun.  Petitioner also contends that Curl's testimony differed from his statement to the police and his testimony at the preliminary examination where he said that Lori Manuel did not hand the complainant's keys and phone to Petitioner or that he (Curl) did not really know whether that happened.

Petitioner raised his perjury claim in his *pro se* supplemental brief on direct appeal and in his post-appeal motion for relief from judgment. The Michigan Court of Appeals reviewed the issue for "plain error" during the direct appeal and concluded that no plain error affecting Petitioner's substantial rights occurred.

### a.  Clearly Established Law

Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate,* 386 U.S. 1 (1967)). The Supreme Court has made clear that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' " *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But "[a] conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' " *Fields*, 763 F.3d at 462 (quoting *Giglio,* 405 U.S. at 154).

> To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009); *see also Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012).

Petitioner must demonstrate that the testimony in question was "indisputably false" and that the alleged perjury was not harmless error. *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

### b. Application

There were some discrepancies in the evidence at Petitioner's trial. The prosecutor, for example, pointed out during her closing argument that even though Petitioner and Mr. Curl had said the nine-millimeter gun at Curl's house belonged to Ms. Hall, Ms. Hall herself denied owning the gun. *See* 4/9/13 Trial Tr. at 201-203, ECF No. 9-12, PageID. 846-848. But ownership of the nine-millimeter gun was not a critical issue in the case. Petitioner admitted to possessing both the nine-millimeter gun and the .22 caliber gun immediately before the shooting, and he stipulated that he was ineligible to possess a gun at the time. *See* 4/10/13 Trial Tr. at 29, 90-91, ECF No. 9-13, PageID. 931, 992-993.

Defense counsel impeached Ms. Hall with the fact that she did not mention the nine-millimeter gun until another witness stated she had a gun. Defense counsel also elicited Ms. Hall's testimony that the first time she had an explanation for the

presence of nine-millimeter bullets in her purse was when she testified.  *See* 4/9/13 Trial Tr. at 204-205, ECF No. 9-12, PageID. 849-850.

As for Ms. Hall's testimony that Petitioner made her remove her keys and phone from her purse and then took the items or directed his sister to take the items, that testimony was corroborated by Mr. Curl.  And even though Ms. Hall's purse was discovered in the locked car that Ms. Hall had used on the day of the crimes, Ms. Hall could have been mistaken about whether she brought her purse into Mr. Curl's house.  Or the jury could have discounted Petitioner's testimony that he tossed Ms. Hall's belongings behind the flat screen TV and inferred instead that Petitioner or his sister took Ms. Hall's purse and keys with them when they left the house and then opened the car with the keys, tossed the purse in the car, and re-locked the car.

Petitioner asserts that Mr. Curl's testimony about the shooting and alleged robbery was perjury because Curl ran out of the room or had his head down and did not see anything after Lori Manuel grabbed the nine-millimeter gun.  But defense counsel was successful in getting Mr. Curl to admit on cross-examination that he had put his head down after he saw Petitioner with a gun and that, for a short period of time, he did not see what happened.  *See id*. at 153, PageID. 798.

Petitioner contends that Mr. Curl confessed to giving false testimony, but the record does not support this contention.  Mr. Curl merely admitted that he did not tell the police about Ms. Hall's gun.  *See id*. at 141-142, PageID. 786-787.

The alleged perjury in this case consisted of discrepancies and inconsistencies in the testimony, and "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989). A witness "may give inaccurate testimony due to confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

Petitioner has failed to show that Ms. Hall's and Mr. Curl's testimonies were indisputably false and that the prosecution knew their testimonies were false. Petitioner also has not persuaded the Court that the discrepancies and inconsistencies in testimony were materially false statements which affected the jury's decision. He has no right to relief on his perjury claim.

## C. Trial Counsel – Claim Three

Petitioner next raises claims about his trial attorney. He describes his third claim as ineffective assistance of counsel based on trial counsel's failure to object to the prosecutor's conduct. But Petitioner also contends that trial counsel was ineffective for not investigating, interviewing, and producing Carl Montgomery and Lori Manuel at trial. Petitioner further contends that trial counsel should have challenged Ms. Hall's and Mr. Curl's version of the facts and impeached them with their criminal records.

### 1.  Legal Framework

To prevail on a claim about trial counsel, Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Unless he makes both showings, it cannot be said that his convictions "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether

there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

## 2.  Application

### a.  Failure to Object to the Prosecutor's Conduct

The contention that trial counsel should have objected to the prosecutor's alleged lack of due diligence in producing Carl Montgomery and Lori Manuel lacks merit.  As pointed out above, Mr. Montgomery and Ms. Manuel were not endorsed witnesses, and the prosecutor had no duty to produce them.  An objection to the prosecutor's alleged lack of due diligence would have been futile, and "the failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).

Defense counsel also was not ineffective for failing to object to the prosecutor's alleged use of perjury.  Petitioner has failed to show that the prosecution witnesses perjured themselves and that the prosecutor knew the testimonies were false.  To his credit, defense counsel thoroughly cross-examined the key prosecution witnesses as a way of challenging their testimonies.  His performance was not deficient, and it did not prejudice the defense.

### b.  Failure to Produce Witnesses and Investigate

Petitioner asserts that defense counsel failed to investigate, interview, and produce Mr. Montgomery and Ms. Manuel and failed to ask the prosecutor to assist

him in finding the witnesses.  This contention lacks merit, because defense counsel

did attempt to find and subpoena the witnesses.  As explained by the Michigan Court

of Appeals:

> On the first day of the scheduled trial, defense counsel noted that
> defendant wished to call Lori and Montgomery, but their addresses
> were unknown and thus counsel could not subpoena them.  Defense
> counsel stated he had called defendant's mother to obtain contact
> information for them, but it proved unsuccessful.  Even defendant,
> Lori's brother, was unable to provide contact information to defense
> counsel.  The record also reflects that Detective Tim Williams
> attempted to locate Lori multiple times to interview her, but was also
> unsuccessful.  He also distributed Lori's picture through the Detectives
> Network and to patrolling officers, to no avail.  Further, according to
> the police report, Montgomery was questioned at the scene and
> indicated that he did not know anything about the incident.

*Manuel*, 2014 WL 3705101, at *4.  These factual findings are supported by the

record before this Court.   *See* 1/29/13 Trial Tr. at 6-8, ECF No. 9-9, PageID. 593-

595; 4/9/13 Trial Tr. at 240-241, ECF No. 9-12, PageID. 885-886.

The Court of Appeals reasonably concluded that

> [d]efense counsel's performance was not deficient for failing to
> call the two witnesses, where it is clear from the record that those
> witnesses could not be located by counsel, defendant, or the police after
> exerting reasonable efforts to locate them. Additionally, with regard to
> Montgomery, the record indicates that he had no knowledge of the
> incident, and thus would not aid the defense.

*Manuel*, 2014 WL 3705101, at *4.  Petitioner himself testified that Mr. Montgomery

was not present during the shooting, *see* 4/10/13 Trial Tr. at 83-84, ECF No. 9-13,

PageID. 985-986, and because the testimony at trial suggested that Ms. Manuel may

have had a role in the robbery, Petitioner was not prejudiced by defense counsel's failure to produce her.

### c. Failure to Impeach Prosecution Witnesses

Petitioner asserts that defense counsel failed to impeach Mr. Curl with his version of the facts and his inability to see what happened or explain where Petitioner acquired a gun before the shooting.   This claim is belied by the record, which shows that defense counsel attempted to impeach Mr. Curl with his failure to see everything that occurred, including where Petitioner acquired the gun that he pointed at Ms. Hall.  *See* 4/9/13 Trial Tr. at 153-154, ECF No. 9-12, PageID. 798-799.

Defense counsel also tried to impeach Ms. Hall's testimony.  As the Michigan Court of Appeals correctly pointed out,

> defense counsel thoroughly cross-examined the victim and Curl regarding their drug use and perception of the incident and the victim's possession of a gun and her propensity for violence, which exposed inconsistencies in their testimony.   Additionally, in his closing argument, defense counsel highlighted those inconsistencies by arguing that the victim possessed a nine-millimeter handgun, changed her story at trial, and had a history of violence.  Defense counsel also argued that the victim was high on several drugs and that her perception of the events was impacted as a result.

*Manuel*, 2014 WL 3705101, at *4.  The Court of Appeals reasonably concluded that defense counsel's performance was not deficient.  *Id*.

Petitioner, nevertheless, alleges that defense counsel should have impeached Ms. Hall and Mr. Curl with their criminal records.  But he has not identified the

witnesses' prior convictions, nor demonstrated that evidence of the convictions would have been admissible. Defense counsel acted reasonably in trying to impeach the witnesses' credibility by other means.

For all the reasons given above, defense counsel satisfied *Strickland's* deferential standard. Counsel's performance did not fall below an objective standard of reasonableness and, therefore, it was not deficient. The allegedly deficient performance also did not prejudice the defense. The state appellate court's rejection of Petitioner's ineffective-assistance-of-counsel claim was objectively reasonable, and Petitioner has no right to relief on his third claim.

### D. Defense Counsel's Alleged Failure to Present Evidence -Claim Four

Plaintiff asserts that his trial attorney was ineffective for failing to present evidence of Ms. Hall's character trait for violence. Petitioner maintains that the evidence would have supported his claim of self-defense.

Defense counsel did elicit Petitioner's testimony regarding Ms. Hall's attempt to murder people or arrange for other individuals to murder people. *See* 4/10/13 Trial Tr. at 37-46, ECF No. 9-13, PageID. 939-948. Further, on cross-examination by the prosecutor, Petitioner testified that Ms. Hall always acted violently and that she had a reputation for violence. *Id*. at 80-81, PageID. 982-983. Given Petitioner's testimony about Ms. Hall's alleged propensity for violence, it cannot be said that

defense counsel's performance was deficient and that the alleged deficiency prejudiced the defense.

### E.  Defense Counsel's Failure to Challenge a Juror for Cause – Claim Five

Petitioner asserts that his trial attorney was ineffective for failing to challenge a juror for cause during *voir dire*.  The person in question was juror G-216, Shirley Beardslee.  According to Petitioner, Ms. Beardslee was biased because she stated that she was the mother of a police officer and that she believed police officers.  *See* 4/9/13 Trial Tr. at 70, ECF No. 9-12, PageID. 715.

This claim lacks merit because Ms. Beardslee was dismissed as an alternate juror near the close of the case; she did not deliberate Petitioner's case.  *See* 4/10/13 Trial Tr. at 170-171, ECF No. 9-13, PageID. 1072-1073.   Any deficiency in counsel's performance did not prejudice Petitioner.

### F.  Speedy Trial – Claim Six

Petitioner claims that there was a delay of almost a year before he was brought to trial and, therefore, his Sixth Amendment right to a speedy trial was violated.  He seeks to have the charges against him dismissed due to the claimed error.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI.   When determining whether a particular defendant was deprived of his right to a speedy trial, courts must consider and

balance the following four factors:  (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Id*. at 533.  "A one-year delay is presumptively prejudicial and triggers analysis of the remaining *Barker* factors."  *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017)

The crimes in this case occurred on May 11, 2012, and it appears that Petitioner was arrested and charged approximately two weeks later.  Because his trial commenced less than a year later, on April 9, 2013, the delay was not presumptively prejudicial.  The trial, moreover, was postponed several times as a result of the injuries Ms. Hall sustained during the incident in question. She was hospitalized for a long time, and she had multiples surgeries.  *See* pretrial transcripts dated September 14, 2012, October 12, 2012, November 26, 2012, and December 17, 2012, ECF Nos. 9-5, 9-6, 9-7, and 9-8.

On January 19, 2013, the trial court tried to select a jury, but before the court could complete the process, the prosecutor received a message stating that Ms. Hall had returned to the hospital.  Petitioner objected to the delay, but he also declined the trial court's offer to take Ms. Hall's testimony in the hospital.  The trial court

then re-scheduled the trial for March 5, 2013.  *See* 1/29/13 Trial Tr. at 38-43, ECF No. 9-9, PageID. 625-630.  The trial was postponed again due to an additional surgery and the complainant's need to recuperate.  *See* 2/22/13 Pretrial Tr., ECF No. 9-10.  The trial finally began on April 9, 2013.

Nothing in the record suggests that any delay was due to bad faith on the part of the prosecution or an attempt to seek a tactical advantage over Petitioner.  Although Petitioner alleges that the delay increased his anxiety and hampered his defense, he has not shown how his defense was hampered.

On balance, the four factors weigh in the State's favor.  Although Petitioner did object to the delay, the delay was not uncommonly long, there was a valid reason for the delay, and there was no apparent prejudice as a result of the delay.  Petitioner's speedy trial claim lacks merit.

### G.  Appellate Counsel – Claim Nine

In his ninth and final claim, Petitioner alleges that his appellate attorney on direct appeal was ineffective because the attorney failed to raise a claim about trial counsel and other issues.  Petitioner raised this issue in his motion for relief from judgment.  The state trial court rejected the claim because Petitioner had not persuaded the court that, but for appellate counsel's failure to raise Petitioner's other claims, the result of the appeal would have been different.  The trial court also stated that Petitioner was precluded from raising his claim about appellate counsel in his

post-conviction motion because he could have raised his claim in his *pro se* brief on direct appeal, and he had not shown good cause for his failure to do so.

On habeas review, the proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on his claim about appellate counsel, Petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability the defendant would have prevailed on appeal if his attorney had raised the issues. *Id*. (citing *Strickland,* 466 U.S. at 687-91, 694).

To his credit, appellate counsel raised one substantial claim on direct appeal: Petitioner's first claim regarding the sufficiency of the evidence. Petitioner was not prejudiced by appellate counsel's failure to raise Petitioner's second and third claims on appeal, because Petitioner was able to raise those claims in his *pro se* supplemental brief.

Petitioner's fourth and fifth claims about trial counsel's failure to (i) present evidence of the complainant's propensity for violence and (ii) challenge a biased jury for cause lack merit for reasons given above. Counsel *did* elicit testimony about the complainant's violent tendencies, and the allegedly biased juror did not deliberate Petitioner's case. Petitioner's sixth claim regarding a speedy trial also lacks merit because the delay was not uncommonly long, there was a valid basis for

the delay, and Petitioner was not prejudiced by the delay.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner's seventh claim regarding the prosecutor's alleged subornation of perjury is similar to a portion of Petitioner's second claim, which was raised on appeal, and his eighth claim regarding the weight of the evidence is similar to his first claim, which he also raised on appeal.   The Michigan Court of Appeals found no merit in Petitioner's challenge to the sufficiency of the evidence, and it disagreed with Petitioner's contention that the prosecutor used perjured testimony to obtain Petitioner's convictions.

The Court concludes that appellate counsel did not act unreasonably in failing to discover and raise non-frivolous issues on appeal and that Petitioner would not have prevailed on appeal if his attorney had raised all his claims on appeal. Petitioner is not entitled to relief on his claim because the state trial court's conclusion -- that appellate counsel was not ineffective -- was not contrary to, or an unreasonable application of, *Strickland* or *Robbins*.

## V.  Conclusion

The state courts' rejections of Petitioner's claims were not so lacking in justification that there was an error beyond any possibility for fairminded

disagreement.   The Court, therefore, denies the petition for a writ of habeas corpus.
[ECF No. 1]

The Court also denies Petitioner's second motion for a stay.  [ECF No. 15]

The Court declines to grant a certificate of appealability because Petitioner
has not "made a substantial showing of the denial of a constitutional right."   28
U.S.C. § 2253(c)(2).  He also has not shown that reasonable jurists could disagree
with the Court's resolution of his constitutional claims and that his claims deserve
encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).
The Court, nevertheless, grants Petitioner leave to appeal *in forma pauperis* because
he was permitted to proceed *in forma pauperis* in this Court, and an appeal could be
taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).


Dated:  July 31, 2020                              s/Denise Page Hood
                                                   Chief Judge, United States District